Filed 5/19/25  P. v. Ayala CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
### SECOND APPELLATE DISTRICT
### DIVISION FOUR

|  |  |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>JOSE MIGUEL AYALA,<br><br>　　Defendant and Appellant. | B336401<br><br>Los Angeles County<br>Super. Ct. No. VA111663 |

　　APPEAL from an order of the Superior Court of Los Angeles County, Andrew C. Kim, Judge. Reversed and remanded with instructions.

　　Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

　　Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Kim Aarons and Kristen J. Inberg, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION[1]

The trial court denied Defendant-Appellant Jose Miguel Ayala's petition for resentencing under Penal Code section 1172.6.[2] We reverse, based in part on the People's agreement that reversal is warranted.

Ayala's sole contention on appeal is that the trial court erred by relying on a preliminary hearing transcript in concluding that he was prima facie ineligible for relief under section 1172.6, subdivision (c). The People note (accurately) that this contention is now incorrect as stated. Under our Supreme Court's recent decision in *People v. Patton* (2025) 17 Cal.5th 549, 564 (*Patton*), the trial court could properly rely on the preliminary hearing transcript as part of the record of conviction in determining whether Ayala was ineligible for section 1172.6 relief at the prima facie stage of the proceedings.

Nonetheless, the People agree with Ayala that reversal is warranted, as do we. As explained below, because the preliminary hearing transcript does not conclusively foreclose the possibility that Ayala pleaded no contest to attempted murder under an imputed-malice theory that would no longer be available under current law, and because the People concede that Ayala has made a sufficient prima facie showing, we too conclude that a sufficient prima facie showing has been made. We therefore remand the matter for an evidentiary hearing under section 1172.6, subdivision (d).

---

1       We resolve this case by memorandum opinion. (Cal. Stds. Jud. Admin., § 8.1.)

2       All undesignated statutory references are to the Penal Code.

# BACKGROUND

In 2009, the Los Angeles County District Attorney filed an information charging Ayala, as well as codefendants Vincent David Mendoza and Edward Meraz, with kidnapping (§ 207, subd. (a); count one); attempted willful, deliberate, and premeditated murder (§§ 664, 187, subd. (a); count two); aggravated mayhem (§ 205; count three); and assault with a deadly weapon (§ 245, subd. (a)(1); count four). The information also alleged that Ayala and codefendant Mendoza (1) personally used a deadly or dangerous weapon (a knife) in the commission of counts one, two and three (§ 12022, subd. (b)(1)); and (2) inflicted great bodily injury upon the victim in the commission of counts two, three, and four (§ 12022.7, subd. (a)). The information alleged Ayala sustained two prior strike and prior serious felony convictions. (§§ 1170.12, subds. (a)-(d); 667, subds (b)-(i); 667, subd. (a).)

At Ayala's preliminary hearing on December 17, 2009, the People presented testimony from Christina Martinez, the victim. Martinez was the sole witness who testified. She testified that she was at her boyfriend's house at 2:00 a.m. on August 4, 2009, when Ayala and his two codefendants arrived. Ayala told Martinez they were going to take her home after they went to the beach. Martinez got into Ayala's car with the three men. While they were driving, codefendants Mendoza and Meraz tied Martinez's hands. When Martinez resisted, Ayala pulled over to the side of the road near a canyon, held a knife to Martinez's neck, and, according to Martinez, said he was going to kill her if she did not stop moving.

According to the victim, Martinez, codefendant Mendoza pulled out a syringe and injected Martinez in the neck five to ten

times.  Martinez started choking and gagging.  The men took Martinez out of the car and threw her to the ground.  They hit her in the ribs, then hit her in the head with what she assumed was a bat though she did not see the weapon.  Martinez blacked out when she got hit in the head, then when she woke up, the men threw her down into the canyon.[3]

The three men followed Martinez down into the canyon.  Ayala approached Martinez from behind and said, "you try to kill me, you try to threaten me and this is what happens," then he cut her throat twice with a knife.  As the men climbed out of the canyon, Martinez got up and asked why they were doing this to her.  Meraz said "she's still talking," so Mendoza came back down into the canyon and stabbed Martinez twice in her neck with a pocketknife.  Martinez decided to play dead and wait for the men to leave, which they did after a few minutes.

The parties stipulated that the police recovered shovels, ropes, and paper towels from the car where they found the codefendants.

Following the preliminary hearing, on March 17, 2011, Ayala pleaded no contest to attempted willful, deliberate, and premeditated murder, admitted he personally used a deadly or dangerous weapon and inflicted great bodily injury in the commission of the offense, and admitted the prior conviction allegations were true.  The trial court sentenced Ayala to 39 years to life in state prison.

---

3      Martinez testified inconsistently about who threw her down into the canyon.  She testified that Ayala and Mendoza threw her into the canyon; that she was not sure which of the men threw her into the canyon because she was still partially blacked out; and that it was Ayala who threw her into the canyon.

4

On January 13, 2022, Ayala submitted a petition under section 1172.6. The petition was a form petition, and its allegations for relief made conclusory claims that Ayala was convicted of attempted murder under a now invalid imputed-malice theory of liability. The trial court appointed counsel on Ayala's behalf.

On December 18, 2023, after allowing briefing from both parties, the trial court considered Ayala's petition and denied it. Ayala timely appealed.

## DISCUSSION

"In 2018, the Legislature amended the law of homicide, eliminating several theories of liability based on imputed malice. It has also offered relief to those convicted under certain homicide theories, such as murder or attempted murder under the natural and probable consequences doctrine, whose convictions are now tainted. (Pen. Code, § 1172.6, subd. (a).) Petitioners seeking relief under section 1172.6 must, first, file a facially valid petition that states the statutory requirements for relief (*id.*, subd. (b)), and second, make a 'prima facie showing' (*id.*, subd. (c)), before a court must issue an order to show cause and hold an evidentiary hearing on the ultimate question of resentencing at which the People will bear the burden of defending a conviction under the amended law (*id.*, subd. (d))." (*Patton*, *supra*, 17 Cal.5th at p. 556, fn. omitted.)

The question here is whether Ayala properly made the requisite "prima facie showing" at the second stage of the proceedings. We review the trial court's determination of that issue de novo. (*People v. Harden* (2022) 81 Cal.App.5th 45, 52.)

*Patton* clarified the requirements for a section 1172.6 petitioner's prima facie showing in cases—like this one—where

the petitioner's conviction was the result of a no contest plea following a preliminary hearing.  Our Supreme Court explained that "the prima facie inquiry under section 1172.6 [is] 'analogous' to the prima facie inquiry in habeas corpus proceedings." (*Patton*, *supra*, 17 Cal.5th at p. 563.)  As in habeas cases, "'"the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if [those] factual allegations were proved.  If so, the court must issue an order to show cause."'" (*Ibid.*)

While "the habeas corpus process does not seamlessly map onto the section 1172.6 process," as in the habeas process, the 1172.6 process reflects "discomfort" at the prima facie stage with "conclusory allegations." (*Patton*, *supra*, 17 Cal.5th at p. 565, fn omitted.)  More specific factual allegations at the prima facie stage help to "identify 'material issues of disputed fact'" and provide "'a measure of frankness in disclosing [the relevant] factual situation' supporting relief," and thus may be required. (*Ibid.*)

Ultimately, the Supreme Court held that "a section 1172.6 petitioner who, despite having access to counsel upon submission of a facially sufficient petition, offers only conclusory allegations of entitlement to relief, in response to a record of conviction that demonstrates the petitioner's conviction was under a still-valid theory, has not, thereby, made a prima facie showing." (*Patton*, *supra*, 17 Cal.5th at p. 565, fn. omitted.)  Notably, *Patton* involved a case where the facts in the record of conviction were "undisputed" and the record of conviction "demonstrate[d] [that] relief [was] unavailable." (*Id.* at pp. 566-567.)

Applying *Patton* to this case, we first note a key difference. Unlike *Patton*, the record of conviction does not foreclose the

6

possibility that, due to the actions of a codefendant, the conviction for attempted murder arose under an application of the natural and probable consequences doctrine, a now-invalid imputed-malice theory of liability.[4]

Here, the information charged not only Ayala but also two other codefendants, Mendoza and Meraz, with attempted willful, deliberate, and premeditated murder. All three men were also charged with kidnapping, mayhem, aggravated assault, and assault with a deadly weapon. The information alleged that both Ayala and codefendant Mendoza personally used a deadly or dangerous weapon and inflicted great bodily injury upon the victim in the commission of the attempted murder.[5] Based on the record of conviction that is before us as expressed in the preliminary hearing, it is possible to impute the malice element of attempted murder to Ayala from another codefendant in a way now prohibited under current law. As one example, the preliminary hearing testimony does not foreclose an inference

---

4      As all parties agree, when Ayala pleaded no contest in 2011, before the enactment of Senate Bill No. 775, the natural and probable consequences doctrine was still a viable imputed-malice theory of liability for attempted murder.

5      Although Ayala admitted he used a knife and inflicted great bodily injury in the commission of the attempted murder, these admissions, standing alone, do not demonstrate as a matter of law that he is guilty of attempted murder under the theory that he harbored the intent to kill. (See, e.g., *People v. Estrada* (2024) 101 Cal.App.5th 328, 338 ["Estrada's bare admission of the enhancements for personal use of a deadly weapon (§ 12022, subd. (b)(1)) and infliction of great bodily injury (§ 12022.7, subd. (a)) do not establish that he acted with the intent to kill or refute that he was convicted on a theory of imputed malice"].)

that Ayala lacked the intent to kill the victim, but that codefendant Mendoza, whom the victim testified also stabbed her, did intend to kill.  Ayala thus may have pled no contest on the theory that Mendoza's intent to kill was imputed to him because both were coparticipants in crimes of kidnapping, mayhem, aggravated assault and assault with a deadly weapon, in a situation where Ayala knew or reasonably should have known that attempted murder was a natural and probable consequence of those other crimes.[6]

A second, critical difference from *Patton* is the People's concession that a prima facie showing was made.  As *Patton* emphasizes, the purpose behind the prima facie showing requirement in section 1172.6 petitions is to provide something akin to a pleading requirement—it is a means of helping to identify for the courts and for the People material facts and "'[the relevant] factual situation' supporting relief." (*Patton*, 17 Cal.5th at p. 566.)  Where, as here, the People have conceded that a petitioner has met the requirements of a prima facie showing, that is a strong indication that the purpose of a prima facie showing has been met, and that the parties have a sufficient

---

6      We provide this example for purposes of illustration only, not as a favored reading of the evidence or as an indication that there is in fact reasonable doubt as to whether Ayala could be convicted of attempted murder under current law.  Nor do we intend this example to be a limitation on other ways in which Ayala might have been prosecuted under a now-invalid imputed-malice theory, or for it to any way control the presentation of evidence or the trial court's determination at a section 1172.6, subdivision (d) evidentiary hearing.

factual understanding to proceed to the evidentiary hearing stage.[7]

Taken together, these considerations compel reversal. Although Ayala made only conclusory allegations supporting relief, the People have not contended that those conclusory allegations were insufficient to meet his prima facie burden. And, unlike *Patton*, the conclusory allegations are not contrasted with a record of conviction that conclusively excludes the possibility that Ayala was convicted of murder based on a now-invalid imputed-malice theory.

We therefore remand the matter to the trial court with instructions to conduct an evidentiary hearing to determine whether Ayala is guilty of attempted murder beyond a reasonable doubt under current law. We express no opinion concerning what finding the trial court should reach in making that factual inquiry.[8] Because we conclude remand is warranted under state

---

7    We note that neither party raised an argument that *Patton* could be read to require that something more than conclusory allegations supporting relief be provided at the prima facie stage even in a case with a preliminary hearing transcript similar to this one—an issue which we do not address and offer no opinion upon.

8    The record indicates that there was a factual basis hearing for Ayala's plea, though that factual basis hearing is not contained in this appellate record. At Ayala's plea hearing, his attorney requested that the factual basis hearing be sealed for purposes of protecting Ayala, and the trial court granted that request. We presume the trial court reviewed the sealed factual basis hearing, as well as the rest of the record of conviction, when denying Ayala relief as a matter of law. On remand, the trial court may again, if appropriate, consider the contents of the

9

statutory law, we need not address Ayala's contention that remand is required because the trial court's order denying him relief violated his constitutional rights.

## DISPOSITION

We reverse the trial court's order denying Ayala relief, and remand the matter to the trial court with directions to conduct an evidentiary hearing under section 1172.6, subdivision (d).

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

DAUM, J.*

We concur:

ZUKIN, Acting P.J.

MORI, J.

---

factual basis hearing in determining whether Ayala is eligible for section 1172.6 relief.

\* Judge of the Los Angeles Superior Court assigned by the Chief Justice pursuant to article IV, section 6 of the California Constitution.